IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | DOCKET NO.: 3:23-cr-00176 |
| | ) | |
| v. | ) | SENTENCING MEMORANDUM |
| | ) | |
| (4) HOSEA FERNANDEZ HAMPTON, JR. | ) | |
| | ) | |
| a/k/a "Zay" | ) | |

_____

NOW COMES the United States of America, by and through Russ Ferguson, United States Attorney for the Western District of North Carolina, who files the below sentencing memorandum in support of a sentence for Defendant Hosea Hampton ("HAMPTON") within the guideline range calculated by the United States Probation Office (USPO). For years, HAMPTON was an unrepentant car thief, stealing vehicles from car dealerships across the country; a guideline sentence for HAMPTON would appropriately reflect the serious nature and considerable scope of his crimes as well as other sentencing factors, including deterrence and his criminal history.

## **PROCEDURAL HISTORY**

On August 15, 2023, HAMPTON was indicted before a federal grand jury in Charlotte, North Carolina, in a sixteen-count indictment, along with four coconspirators. On August 21, 2025, HAMPTON pleaded guilty before U.S. Magistrate Judge Susan C. Rodriguez to two counts in the Bill of Indictment: Conspiracy to Commit an Offense Against the United States, in violation of 18 U.S.C.

§ 371 (Count 1), and Possession of a Stolen Motor Vehicle, in violation of 18 U.S.C. § 2313 (Count 2). On November 4, 2025, the United States Probation Office (USPO) filed the draft Presentence Investigation Report (PSR) in this case. Doc 193 at 1. No objections were filed by HAMPTON before the final PSR was filed on November 24, 2025; in the final PSR, USPO calculated a total offense level of 29 and a criminal history category of IV, with a guideline range of 121-151 months. Doc 193 at 33, 36. On December 12, 2025, HAMPTON filed late objections to the final PSR. Doc 196. These objections, covered below, should be overruled.

## BACKGROUND: THE CONSPIRACY

From 2021 through 2023, HAMPTON and his coconspirators engaged in a scheme and conspiracy to steal high-end motor vehicles from car dealerships at various locations across the United States and transport them across state lines and to otherwise possess and sell stolen motor vehicles that had been transported across state lines. Doc 193 at 5. During the conspiracy, HAMPTON and his coconspirators stole dozens of vehicles worth millions of dollars, many of which were transported to the greater Charlotte, North Carolina region. *Id.*

It was part of the conspiracy that HAMPTON and his coconspirators stole motor vehicles from car dealerships located throughout the United States, including: North Carolina, South Carolina, Georgia, Florida, Tennessee, Kentucky, Alabama, Mississippi, Louisiana, Indiana, Ohio, Pennsylvania, New Jersey, New York, and Arizona. *Id.* In order to maximize their profits from the thefts, HAMPTON and his

coconspirators stole high-end vehicles from the victim car dealerships, including various luxury models made by Bentley, BMW, Cadillac, Infiniti, Land Rover, Mercedes-Benz, and Porsche, as well as trucks and other expensive models from Chevrolet, Dodge, Ford, GMC, and Jeep. *Id*.



*Figure 1: HAMPTON (right) with codefendants Reginald Hill (left) and DeWanne White (bottom) at a car dealership in Panama City, Florida, where multiple thefts occurred as part of the auto theft scheme on or about September 24-25, 2021. Doc 193 at 6.*

## DEFENDANT'S OBJECTIONS SHOULD BE OVERRULED

### *The Four-Level Leadership Enhancement Should Apply*

HAMPTON explicitly agreed to the following language in the factual basis filed in this case:

> During the conspiracy, HAMPTON was one of the leaders of the auto theft scheme. HAMPTON frequently organized the car thefts, including by determining the victim dealership(s) and by arranging for drivers to transport the stolen vehicles and later paying the drivers for their services.

Doc 186 at 2. Moreover, HAMPTON explicitly agreed in the signed plea agreement to jointly recommend a four-level enhancement under U.S.S.G. § 3B1.1(a) for his role as an "organizer and leader of the criminal activity that involved five or more participants and was otherwise extensive."[1] Doc 187 at 2.

Defendant originally objected to the enhancement under U.S.S.G. § 3B1.1(a). Doc 196 at 1. However, defense counsel has since informed the United States that this objection will be withdrawn at sentencing. In any event, the enhancement should apply given Defendant's concessions in the plea agreement and the language of the factual basis.

### *Defendant Should Qualify as a Criminal History Category IV*

In the PSR, the USPO correctly calculated that HAMPTON is a criminal history category IV with 9 criminal history points. Doc 193 at 26. In his sentencing memo, HAMPTON objected to 3 of the criminal history points, which would reduce him to a criminal history category III with 6 criminal history points. Doc 196 at 1-2. This Court should overrule this objection.

Under U.S.S.G. § 4A1.1(b), a defendant receives two points "for each prior sentence of imprisonment of at least sixty days not counted in subsection (a)." The

---

[1] Under U.S.S.G. § 3B1.1(a), a four-level enhancement applies based on the defendant's role in the offense "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive". Under Commentary Note 4, "[f]actors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices… [and] the degree of participation in planning or organizing the offense…"

PSR notes that HAMPTON was convicted of Possession of Marijuana Paraphernalia on April 12, 2022, in Cabarrus County, and received a sentence of "64 days custody (credit for 64 pretrial days, time served)". Doc 193 at 21. HAMPTON nonetheless objects to the 2 points assessed for this conviction, apparently based on the fact that he "pled guilty to a time served sentence *to be released*." Doc 196 at 1 (emphasis added). But HAMPTON's motive is irrelevant for the purposes of criminal history calculations; he served a 64-day sentence, which was properly counted for 2 points under U.S.S.G. § 4A1.1(b). Thus, HAMPTON should remain a criminal history category IV with at least 8 points.[2]

### 3553(a) FACTORS

The 18 U.S.C. § 3553(a) factors dictate a significant prison sentence for HAMPTON. While the post-*Booker* sentencing regime affords the sentencing court discretion in selecting the appropriate sentence, "[a]s a matter of administration and to secure nationwide consistency, the advisory Guidelines should be the starting point and the initial benchmark" in determining the appropriate sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007). The Fourth Circuit has stated it even more strongly, describing the Guideline offense level as "the *crucial* 'starting point,' as well as the 'initial benchmark'" in the sentencing process. *United States v. Lewis*, 606 F.3d 193,

---

[2] HAMPTON also objects to the assessment of one point for his guilty plea and deferred prosecution for Misdemeanor Possession of Marijuana up to ½ Ounce. But this point should also count under U.S.S.G. § 4A1.1(c). *See* U.S.S.G. § 4A1.2(f) ("A diversionary disposition resulting from a finding or admission of guilt, or a plea of *nolo contendere*, in a judicial proceeding is counted as a sentence under §4A1.1(c) even if a conviction is not formally entered, except that diversion from juvenile court is not counted.")

199 (4th Cir. 2010) (quoting *Gall*, 522 U.S. at 49) (emphasis added).

### *The Seriousness of the Offense and its Nature and Circumstances Warrant a Significant Sentence*

HAMPTON played a leading role in a multi-million dollar auto theft ring targeting expensive vehicles from dealerships stretching across the country, from Florida to New York to Arizona. The scheme required significant planning and employed different methods, including keyfob swapping thefts[3] and heists where multiple vehicles were stolen at the same time. The coconspirators also took steps to remove GPS and other tracking systems embedded in the stolen cars' electronics, which prevented the dealerships and law enforcement from locating the vehicles after they were stolen. Ultimately, the clever scheme caused dozens of vehicles to be stolen off of dealership lots, causing hardships for dozens of business owners, many of whom lost multiple vehicles at a time.

As described above, HAMPTON played a role in organizing these thefts and recruiting drivers for the stolen vehicles; in total, he personally participated in, knew about, or reasonably foresaw the thefts of approximately 82 vehicles worth approximately $5.9 million.[4] HAMPTON also frequently possessed and later sold many of the vehicles that were stolen in the scheme.

Adding to the seriousness of the offense, HAMPTON drove vehicles recklessly

---

[3] Coconspirators often deceived car dealership employees by posing as potential customers and obtaining the target vehicles' key fobs, which the coconspirators would covertly switch out for blank key fobs, only to return later with the true vehicle fob to drive the target vehicles off the lot.

[4] These figures represent only confirmed thefts.

and was also armed during the course of the scheme. On July 26, 2021, HAMPTON fled at a high rate of speed from a traffic stop conducted by a North Carolina state trooper in a Dodge vehicle stolen from Florida in July 2021.[5]  And on or about October 5, 2021, HAMPTON was stopped in Flagler, Florida, driving a blue 2018 BMW M5 that was stolen from a car dealership in Wilmington, North Carolina in August 2021. Codefendant White was the passenger in the vehicle. A Glock 19x firearm was located under the driver's seat.[6]



*Figure 2: the Glock firearm and various vehicle keyfobs located in the stolen BMW that HAMPTON was driving in Florida on or about October 5, 2021.*

This was a significant and well-organized scheme that took place over several years and required brazen actions by HAMPTON and his coconspirators. A guideline sentence here is appropriate given the seriousness of the offense and the nature and circumstances surrounding it.

---

5 HAMPTON pleaded guilty to Felony Fleeing to Elude Arrest with a Motor Vehicle (3 aggravating factors) for this incident on May 2, 2022. Doc 193 at 25.
6 HAMPTON was found guilty of Possession of a Firearm by a Convicted Felon for this incident on January 3, 2023. *Id*. at 23

### *The History and Characteristics of Defendant Also Warrant a Significant Sentence*

HAMPTON's criminal history includes several serious convictions, highlighted by multiple felonies for drug and gun crimes. In July 2018, HAMPTON pleaded guilty to Possession with Intent to Sell and Deliver Marijuana in Cabarrus County for which he received a probationary sentence. Doc 193 at 20. While on probation in 2019, HAMPTON was charged with Possession of a Firearm by a Felon in Cabarrus. *Id.* at 21. And in 2020, HAMPTON was charged with another count of Possession of a Firearm by a Felon in Cabarrus. On May 2, 2022, HAMPTON pleaded guilty to both of these felony firearm offenses and again received a probationary sentence for each. *Id.* at 21-22. On the same date, HAMPTON pleaded guilty to 2021 charges of Possession with Intent to Sell and Deliver Marijuana and Felony Eluding Arrest in a Motor Vehicle.[7] *Id.* at 23. In January 2023, HAMPTON was adjudicated guilty of another count of Possession of a Firearm by a Felon in Florida and again received a probationary sentence. [8] *Id.* HAMPTON's criminal history, and particularly his involvement and guns and drugs, calls for a guideline sentence here.

### *The Need to Provide Adequate Deterrence*

Theft schemes, including multi-million-dollar auto theft rings, require deterrence that demand lengthy periods of incarceration. "Because economic and

---

[7] The Fleeing to Elude conviction in Cabarrus is associated with the instant case and is referenced in Paragraph 6(c) of the factual basis. Doc 186 at 2.

[8] A felony Grand Theft Auto count was also dismissed on this date. This incident is also associated with the instant offense and is referenced in Paragraph 6(g) of the factual basis. Doc 186 at 3.

fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence." *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) (internal quotation omitted). "Defendants in white collar crimes often calculate the financial gain and risk of loss, and white collar crime therefore can be affected and reduced with serious punishment." *Id.* at 1227. Put differently, as the Seventh Circuit has explained, "[t]he system of penalties under the Guidelines is constructed on the belief that . . . longer sentences of imprisonment, are more effective deterrents. A large body of evidence supports this intuition." *United States v. Turner*, 998 F.2d 534, 536 (7th Cir. 1993). Thus, a significant sentence is necessary to provide general deterrence from the lure and spoils of luxury vehicle heist schemes, which many potential defendants in this community could view as a low-risk offense for which they will receive a probationary sentence for in state court. The proposed sentence would send the deterrence message courts in this District have repeatedly recognized as imperative in economic crimes.

Given HAMPTON's criminal history, it is also important to provide specific deterrence. Numerous previous felony convictions have not deterred the criminal conduct in this case. This is particularly true given that HAMPTON repeatedly received probation for felony crimes and was, not surprisingly, undeterred from future crimes. A significant prison sentence will force HAMPTON to truly grapple with whether another crime is worth the risk of federal prison.

## <u>CONCLUSION</u>

A downward variance would not properly capture Defendant's conduct in this case or account for his history and characteristics. Thus, the United States respectfully requests this Court order Defendant to serve a sentence within the guideline range. Such a sentence would be sufficient, but not greater than necessary to achieve all of the objectives set forth under <u>18 U.S.C. § 3553(a)</u>.

Respectfully submitted, this 1st day of July, 2026.

RUSS FERGUSON
UNITED STATES ATTORNEY

**s/ William T. Bozin**

William T. Bozin
Assistant United States Attorney
227 West Trade Street, Suite 1650
Charlotte, North Carolina 28202
(704) 816-1625 (office)
<u>william.bozin@usdoj.gov</u>

**s/ Daniel Ryan**
Daniel Ryan
Assistant United States Attorney
227 West Trade Street, Suite 1650
Charlotte, North Carolina 28202
(704) 344-6222 (office)
<u>daniel.ryan@usdoj.gov</u>

# <u>ARTIFICIAL INTELLIGENCE CERTIFICATION</u>

Pursuant to the Court's June 18, 2024, Standing Order, which was published to the Bar of the Western District of North Carolina on June 27, 2024, the undersigned hereby certifies:

1.  No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard online legal research sources Westlaw, Lexis, Fast Case, and Bloomberg;

2.  Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the 1st day of July, 2026.

/s/ William T. Bozin

*Assistant United States Attorney*